**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine E Dorsett, | No. CV-16-01101-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christine Dorsett seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the ALJ's decision contains reversible error and there are no substantial grounds for doubting that Plaintiff is disabled, the Court will reverse and remand for an award of benefits.

I.     **Background.**

Plaintiff is a 59 year-old female who previously worked as a case worker and substance abuse counselor.  A.R. 120, 620.  On March 17, 2008, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning February 15, 2008.  A.R. 620.  On May 6, 2010, ALJ Michael D. Tucevich issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  A.R. 343.  Plaintiff sought review with the Appeals Council, which remanded the case to the ALJ on August 14, 2012.  A.R. 350.  On September 9, 2013, Plaintiff

appeared with her attorney and testified at a hearing before ALJ Claudia L Rosen-Underwood.  A.R. 101.  She appeared again with her attorney at a supplemental hearing on March 25, 2014.  A.R. 101.  At these hearings, a medical expert and two vocational experts testified.  A.R. 101.  On May 30, 2014, ALJ Rosen-Underwood issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

## II.    Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* (internal citations and quotation marks omitted).  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  Harmless error principles apply in the Social Security context.  *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012).  An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III.    The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013, and that she has not engaged in substantial gainful activity since February 15, 2008. A.R. 104. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral sensorineural hearing loss; cervical, thoracic, and lumbar degenerative disc disease; and fibromyalgia. A.R. 105. While the ALJ acknowledged that the record contains evidence of asthma,

obesity, status post gastric bypass, diabetes mellitus, macular degeneration, diabetic retinopathy, mood disorder NOS, personality disorder NOS, and status post cataract removal, she found that these conditions did not impose more than minimal limitations on the claimant and thus are not severe impairments.  A.R. 105-06.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  A.R. 108.  At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work in an inside office-type environment.  A.R. 108.  The ALJ further found that Plaintiff is able to perform any of her past relevant work as a caseworker and substance abuse counselor.  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  A.R.S. 120.

**IV.   Analysis.**

Plaintiff argues the ALJ's decision is defective because it is based on legal error and not supported by substantial evidence.  Doc. 17 at 6.  More specifically, Plaintiff argues that the ALJ erred at step two when she found Plaintiff's eye and mental impairments to be not severe.  Doc. 17 at 6, 26.  Plaintiff also contends that the ALJ made erroneous credibility determinations and medical opinion evaluations, and erroneously found that Plaintiff could perform jobs in light of her vision and hearing loss.

**A.    Step Two Analysis.**

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence."  S.S.R. 85–28 (1985). Impairments are considered "not severe" when "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen,* 80 F.3d at 1290.

The ALJ found evidence in the record of Plaintiff's macular degeneration and mood and personality disorders, but found these impairments not severe because they "do not impose more than minimal limitation in the claimant's ability to perform basic work activities." A.R. 106. The ALJ explained in some detail why he did not find Plaintiff's visual and mental impairments to be severe. Concerning Plaintiff's vision, the ALJ relied on evidence in the record that Plaintiff has good vision in her right eye, her macular degeneration is stable, and her vision improves with the use of frosted glasses. A.R. 106. The ALJ also stressed that Plaintiff engages in activities like watching TV, reading, and using public transportation, and that she had a driver's license and drove in the past. A.R. 106. With regard to Plaintiff's mental impairments, the ALJ noted that:

> mental status examinations consistently found [Plaintiff] alert and oriented with good eye contact, neutral to relaxed and euthymic mood, appropriate affect, intact memory, and fair to good insight, judgment, and concentration. She consistently denied anger/impulse problems. Of significance, the claimant denied side effects of medication. The claimant was seen on average every 2-3 months, which suggests her symptoms were not so severe as to warrant consistent professional medical management. Moreover, she informed a provider she was doing well and maintaining euthymic mood with medication. Furthermore, she requested to be prescribed the same medication without changes, which also implies that regimen was relatively effective. As well, [Plaintiff] informed treating professionals she has had these symptoms for at least 25 years, yet she was able to work at levels exceeding substantial gainful activity and earn a bachelor's degree.

A.R. 107.

Plaintiff argues that the ALJ erred by "equating good visual acuity in one eye with no impairment." Doc. 17 at 6 (emphasis omitted). Plaintiff also alleges that the ALJ erred by finding her mental impairments to be non-severe. *Id.* at 26. Error at this step may be harmless, however, if the ALJ goes on to discuss the ailments that he deemed non-severe when formulating the RFC. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). Because the ALJ proceeded to analyze the effects of Plaintiff's mental illness and

macular degeneration during the RFC assessment, the Court concludes that any error at step two was harmless.

## B. Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Joel Edelstein, D.O., Sharon Steingard, D.O., Lisa Chiles, O.D., Anita Schadlu, M.D., Matthew Doust, M.D., Sanford Goldstein, physical therapist, Sabina Scott, Au.D., Mary Jean Tan, Physician's Assistant. The Court will address the ALJ's treatment of each opinion below.

### 1. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record

as a whole[ ] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

## 2.    Dr. Edelstein.

Dr. Edelstein has been Plaintiff's treating physician since at least 2010.  A.R. 1330.  In 2010, Dr. Edelstein provided a medical opinion that Plaintiff could not sustain full time employment due to headaches, fibromyalgia, diabetic radiculopathy, and macular degeneration.  A.R. 1389.  Dr. Edelstein provided an additional opinion in 2013 which stated that, during an eight-hour work day, Plaintiff would be limited to sitting for two hours, walking for less than two hours, and lifting or carrying less than fifteen pounds.  A.R. 2154.  He further opined that Plaintiff would need to alternate between sitting, standing, and walking at least every 45 minutes, and that she would have significantly limited use of her hands and feet while working.  A.R. 2154.  Additionally, he concluded that Plaintiff would suffer moderately severe additional limitations due to pain and fatigue, and that she would miss over six days per month as a result of her medical conditions.  A.R. 2155.  He noted that he had reviewed treatment notes from other providers, and that prescribed medications cause Plaintiff moderately severe side effects.  A.R. 2155.  Dr. Edelstein provided a third medical opinion in 2014 identifying

almost identical impairments based on findings of degenerative disc disease, chronic pain syndrome, fibromyalgia, visual impairment/macular degeneration, hearing impairment, and bipolar disorder.  A.R. 2545.  Dr. Edelstien added that Plaintiff would be further limited by dizziness and medication side effects, including sedation, lack of focus, and fatigue.  A.R. 2546.

The ALJ assigned "little weight" to Dr. Edelstien's opinions, finding that (1) his treatment notes do not support a finding of fibromyalgia; (2) his conclusions rest on "an assessment of impairments outside the doctor's area of expertise"; (3) he unduly relied on Plaintiff's subjective reports of symptoms and limitations; and (4) his course of treatment has not been "consistent with what one would expect if the claimant was truly disabled".  A.R. 117-38. The limitations assessed by Dr. Edelstein are inconsistent with those assessed by the state agency physicians.  A.R. 991-92, 1004-05, 1100-18, 1140-45.  Therefore, the Court must determine whether the ALJ's reasons for rejecting Dr. Edelstein's opinions are specific and legitimate reasons supported by substantial evidence.  *Cotton*, 799 F.2d at 1408.

### a.     The ALJ' First Reason.

The ALJ asserts that Dr. Edelstein's "own treatment notes do not support a finding of fibromyalgia, as there is no mention of any trigger points." A.R. 117.  But "the 2010 diagnostic criteria [for fibromyalgia] do not require a specific number of tender points in specific locations."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015); S.S.R. 12–2P (2012) (making clear that tender point findings are not necessary where patient has a history of widespread pain and repeated manifestations of six or more fibromyalgia symptoms not attributable to another malady).  The Ninth Circuit has made clear that an ALJ errs when she "effectively require[es] objective evidence for [fibromyalgia,] a disease that eludes such measurement."  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003)) (alterations and quotations omitted).

Even more significantly, the ALJ already found Plaintiff's fibromyalgia to be a severe impairment at step two.  A.R. 105.  Thus, her criticism of Dr. Edelstein's diagnosis is irrelevant.  The ALJ does not provide any specific and legitimate reasons for why she gave little weight to Dr. Edelstein's opinion regarding Plaintiff's limitations resulting from fibromyalgia.  She mentions that the "physician's examinations are routinely fairly unremarkable[,]" but such a statement provides little information about alleged insufficiencies in Dr. Edelstein's opinion.  As a result, the Court concludes that the ALJ's first reason for giving little weight to Dr. Edelstein was not legitimate or supported by substantial evidence.

### b.    The ALJ's Second Reason.

The ALJ found that Dr. Edelstein's assessment addresses areas outside his area of expertise.  A.R. 117.  The ALJ appears to be referring to Dr. Edelstein's findings related to Plaintiff's visual and mental impairments.  A.R. 117-18. Generally, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist."  *Smolen*, 80 F.3d at 1285 (citing 20 C.F.R. § 404.1527(d)(5)).  The Ninth Circuit has made clear, however, that a physician's opinion cannot be disregarded simply because it addresses a topic outside his or her expertise.  *Lester*, 81 F.3d at 833.  As the Ninth Circuit explained:

> the treating physician's opinion as to the combined impact of the claimant's limitations—both physical and mental—is entitled to special weight. . . . An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments—including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.

*Id*.  Given this guidance, the Court concludes that the ALJ's second reason for discounting Dr. Edelstein's assessment, although specific, was not legitimate or supported by substantial evidence.

- 9 -

1

2                      **c.      The ALJ's Third Reason.**

3          The ALJ found that Dr. Edelstein's opinion "relied quite heavily on the subjective

4  report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically

5  accept as true most, if not all, of what [Plaintiff] reported."  A.R. 117.  A physician's

6  reliance on a claimant's "subjective complaints hardly undermines his opinion as to her

7  functional limitations, as a patient's report of complaints, or history, is an essential

8  diagnostic tool." *Green-Younger*, 335 F.3d at 107 (internal citations and quotations

9  omitted).  "If a treating provider's opinions are based 'to a large extent' on an applicant's

10  self-reports and not on clinical evidence," however, and "the ALJ finds the applicant not

11  credible, the ALJ may discount the treating provider's opinion."  *Ghanim v. Colvin*, 763

12  F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

13  Cir. 2008)).

14          The Court finds below that the ALJ erred in finding Plaintiff not credible.  In

15  addition, an ALJ must "explain how she reached the conclusion that a physician's

16  opinion was largely based on self-reports."  *Castilleja v. Colvin*, No. 2:14-CV-3105-

17  RMP, 2016 WL 6023846, at *5 (E.D. Wash. Jan. 27, 2016) (internal quotation marks

18  omitted).  Here, the ALJ merely asserts that Dr. Edelstein's opinions relied on Plaintiff's

19  subjective reports.  She provides no basis for this finding, and fails to identify which of

20  Dr. Edelstein's findings this conclusion relates to.  The ALJ's conclusory statement is not

21  the "detailed and thorough summary of the facts and conflicting clinical evidence"

22  required before the ALJ may reject Dr. Edelstein's opinion.  *Cotton*, 799 F.2d at 1408.

23  What is more, a review of Dr. Edelstein's reports show notations of his observations,

24  diagnoses, and prescriptions, as well as Plaintiff's descriptions of her own symptoms.

25  The Court concludes that the ALJ's third reason was not legitimate.

26                      **d.      The ALJ's Fourth Reason.**

27          Finally, the ALJ found that Dr. Edelstein's treatment was not "consistent with

28  what one would expect if [Plaintiff] were truly disabled."  A.R. 118.  But the ALJ

- 10 -

provides almost no explanation for this conclusion, nor does she identify which of Plaintiff's conditions were insufficiently treated.   In fact, the ALJ acknowledges elsewhere that Plaintiff "sought treatment through a pain management clinic and [] underwent thoracic and cervical epidural steroid injections, as well as lumbar facet joint medial branch block injections." A.R. 111.  The record also indicates that Dr. Edelstein himself prescribed several different medications and treatments, including Toradol injections, Vicodin, Lyrica, Tramadol, Opana, MS Contin, Kenalog injections, and Fentanyl patches.  A.R. 941, 949, 1080, 1084, 1088, 2049, 2053.  The ALJ provides no explanation as to why these are not adequate treatments.  She simply states that there is "no evidence of hospitalizations, physical therapy, surgery, or other similar treatment for [Plaintiff's] pain." A.R. 111.  Because the ALJ does not explain why the extensive pain-management treatments Plaintiff did receive were insufficient to support Dr. Edelstein's opinions, the Court concludes that her fourth reason is not specific or legitimate.

### 3.      Dr. Steingard.

Dr. Steingard examined Plaintiff in January 2011 at the request of the State agency.  A.R. 114.  Dr. Steingard diagnosed Plaintiff with mood disorder, NOS; anxiety disorder, NOS; and personality disorder, NOS; among others.  A.R. 1628.  She concluded that Plaintiff's conditions would impose limitations on her ability to perform substantial work activity for a continuous period of 12 months.  A.R. 1628.  She noted that Plaintiff "will have problems with concentration if she is experiencing episodes of panic" and that she "appears able to perform simple and repetitive tasks." A.R. 1629.   She also concluded that Plaintiff does not appear to have cognitive impairments and is capable of engaging in social interactions.  A.R. 1629.   No other limitations or opinions regarding Plaintiff's capabilities were offered.

The ALJ assigned "little weight" to Dr. Steingard's opinions, finding them unsupported by the clinical record and Plaintiff's own complaints.    A.R. 115.  Additionally, the ALJ found "the restriction of difficulty concentrating during episodes of panic [to be] quite vague and imprecise." A.R. 115.  The limitations assessed by Dr.

Steingard are inconsistent with those assessed by the state agency physicians. A.R. 1100-16. Therefore, the Court must determine whether the ALJ's reasons for rejecting Dr. Steingard's opinions are specific and legitimate reasons supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

While Dr. Steingard found that Plaintiff's conditions will impose limitations on her ability to work, the only specific limitations she articulated is that Plaintiff "will have problems with concentration if she is experiencing episodes of panic." A.R. 1629. The Court agrees that this is an imprecise limitation which provides little meaningful guidance. Dr. Steingard notes Plaintiff's self-reports of agoraphobia and daily anxiety episodes, which are successfully resolved with Xanex. A.R. 1626. Dr. Steingard does not otherwise discuss any history of panic attacks or what triggers them. Additionally, the ALJ noted and relied on substantial evidence from the report when deciding to give little weight to Dr. Steingard's opinion. A.R. 115 (noting, for example, Plaintiff's ability to shop outside the home and prepare meals, as well as Plaintiff's satisfactory attention span). The ALJ did not err in giving little weight to Dr. Steingard's opinions.

### 4.      Drs. Chiles and Schadlu.

#### a.      The opinions.

Dr. Chiles is Plaintiff's treating optometrist. Doc. 18 at 15. In 2013, Dr. Chiles found that although Plaintiff is not legally blind or visually impaired, she does have reduced vision that limits her abilities. A.R. 2200. Dr. Chiles found that Plaintiff has moderate restrictions on her ability to see peripherally, read small print, and read a computer screen. A.R. 2200. She found severe restrictions on Plaintiff's depth perception and mild restrictions on her ability to read average and large print and see fine details. A.R. 2200. She noted that Plaintiff does not drive. A.R. 2200. She opined that Plaintiff would need 200m text computer software and a 3.5x LED magnifier to read. A.R. 2201.

Dr. Schadlu is one of Plaintiff's treating physicians. Doc. 18 at 15. In a 2013 assessment, she found Plaintiff had moderate restrictions on her ability to walk on unfamiliar or uneven ground, drive in familiar areas, and read large print. A.R. 2241.

She noted moderately severe restrictions related to Plaintiff's depth perception and ability to read average font and computer screens, drive in unfamiliar areas, and see fine detail. A.R. 2241.  She also found mild restrictions on Plaintiff's ability to see peripherally and walk on level ground, and severe restrictions on Plaintiff's ability to read small print. A.R. 2241.  She concluded that Plaintiff would require a "magnifier" and is unable to sustain full time employment.  A.R. 2242.

The ALJ afforded "little weight" to both opinions, finding them "not supported by the objective data, which show adequate visual acuity of the right eye and only small central vision loss in the left eye."  A.R. 118.  The ALJ noted that "other opinions from the medical expert at the hearing and the consultative examiners are generally more consistent with the record as a whole."  A.R. 118.  The limitations assessed by Drs. Chiles and Schadlu are inconsistent with those assessed by the state agency physicians. A.R. 991-92, 1140-45.  Therefore, the Court must determine whether the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting their opinions.  *Cotton*, 799 F.2d at 1408.

An ALJ's statement that a treating physician's medical opinion is unsupported by sufficient objective findings, without more, "does not achieve the level of specificity" the Ninth Circuit requires.  *Embrey,* 849 F.2d at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").  The "ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Orn,* 495 F.3d at 632.

The ALJ found that the conclusions of Drs. Chiles and Schadlu are inconsistent with the "objective data, which show adequate visual acuity of the right eye and only small central vision loss in the left eye."  A.R. 118.  The ALJ does not cite anything in the record to support this assertion.  *Id.*  At other points in her opinion, the ALJ discusses Plaintiff's history of vision problems and tests, ultimately concluding that her vision is

not "significantly impaired."  A.R. 106.  In support, the ALJ cites Exhibit 47F, which contains a consultant assessment from Dr. Teresa Pavese.  Dr. Pavese concludes that Plaintiff has "profound vision loss in the left eye" and is "considered a one-eyed person and as such has impaired depth perception and stereopsis."  A.R. 1275-76.  Dr. Pavese recommended that Plaintiff obtain two types of special glasses and a 3x LED hand magnifier, closely resembling the recommendations of Drs. Chiles and Schadlu.

What is more, a review of the record shows that both Dr. Chiles and Dr. Schadlu supplied reports containing substantial data related to Plaintiff's vision.  A.R. 2310-13 (supplying measurements/data related to Plaintiff's central visual acuity, manifest refraction, and central and peripheral visual fields, among others); A.R. 2158-61 (supplying measurements/data related to Plaintiff's vision).  Dr. Chiles further reported that Plaintiff has a "noticeable" problem with depth perception and "bumps into things on the left side."  A.R. 2312.  The ALJ does not mention these reports, falling well short of providing a "detailed and thorough" analysis.  *Cotton*, 799 F.2d at 1408.

### b.    Contrary Evidence in the Record.

The ALJ noted that she gave little weight to the opinions of Drs. Chiles and Schadlu because she found "other opinions from the medical expert at the hearing and the consultative examiners [to be] generally more consistent with the record as a whole."  A.R. 118.  She does not cite the record to support this conclusion or identify the opinions to which she is referring, let alone explain how these unidentified opinions are more consistent with the record as a whole.  A.R. 118.  In subsequent portions of her decision, the ALJ discussed the weight she gave to the opinions of four other doctors when determining Plaintiff's visual RFC.  A.R. 114-117.  Plaintiff argues that the opinions of these consultative examiners and medical experts cannot constitute substantial evidence to support the view that the opinions of Drs. Chiles and Schadlu are not consistent with the record.  Doc. 17 at 13.

First, the ALJ gave partial weight to the opinion of examining physician Mark Binette, M.D.  A.R. 114.  After conducting an eye exam, Dr. Binette found that Plaintiff

was legally blind in the left eye and suffered from macular degeneration and diabetic retinopathy.  A.R. 1052.  The single visual restriction he recommended was that Plaintiff should drive only during daylight hours.  A.R. 1053.  Plaintiff argues that this opinion lacks reliability indicators.  *Id.*  Defendant does not dispute that Dr. Binette, an internal medicine specialist, did not review Plaintiff's medical records and only examined Plaintiff on one occasion in October 2008.  *Id.*; A.R. 114.  But it does not appear that the ALJ relied on this opinion when finding that the opinions of Drs. Chiles and Schadlu are not consistent with the record as a whole.  The ALJ explicitly acknowledged that "there have been a multitude of medical records submitted since [Dr. Binette's] examination with [Plaintiff].  As such, the evidence of record illustrates that additional exertional limitations are warranted."  A.R. 114.

Next, the ALJ gave partial weight to the opinion of Donald Fruchtman, D.O. A.R. 115.  Dr. Fruchtman noted that Plaintiff's visual capacity was limited.  A.R. 1402.  He found that Plaintiff used a cane to walk and that this use was "medically necessary" because without it Plaintiff had a tendency to "bump into walls."  A.R. 1398-99.  Dr. Fruchtman also found that Plaintiff is blind in her left eye and verified through testing that she experiences double vision in her right eye.  A.R. 1402.  Plaintiff argues that the ALJ erred in ignoring these portions of Dr. Fruchtman's opinion.  The ALJ noted that Plaintiff presented with a cane and that she explained it was helpful, but did not discuss Dr. Fruchtman's finding that it was medically necessary.  A.R. 115.   The ALJ also discussed in detail Dr. Fruchtman's finding that Plaintiff's peripheral vision was intact, but did not discuss any of the other issues noted above or that Dr. Fruchtman concluded that visual acuity was a "major problem" for Plaintiff.  The Court agrees that it was error for the ALJ to cite only those portions of Dr. Fruchtman's opinion that disfavored Plaintiff.  Doc. 17 at 14.  What is more, aside from differences regarding the assessments of Plaintiff's peripheral vision, the ALJ does not point to any meaningful inconsistencies between the opinion of Dr. Fruchtman and those of Drs. Chiles and Schadlu.  As a result, the Fruchtman opinion does not constitute substantial evidence supporting the ALJ's

conclusion that the opinions of Drs. Chiles and Schadlu are not consistent with the record as a whole.

The ALJ used the opinion of ophthalmologist Dr. Warren Heller for "objective data."  A.R. 115.  But Dr. Heller did not opine on Plaintiff's visual limitations.  A.R. 115.  He found that Plaintiff suffers from macular degeneration, experiences double vision, and has central vision blindness in her left eye.  A.R. 1806.  Dr. Heller noted that Plaintiff does not have difficulty ambulating because of vision.  A.R. 1806.  Plaintiff argues that the ALJ erred by omitting that Dr. Heller found Plaintiff to be "seeing slightly double images" in her right eye and found her vision unlikely to be restored by treatment.  Doc. 17 at 14.  To the extent that the ALJ ignored this data, the Court agrees that it was error to select only evidence which disfavored Plaintiff.

Finally, the ALJ adopted the opinion of non-examining ophthalmologist Michael Plotkin, M.D.  A.R. 116-17.  After reviewing the evidentiary record as a whole, Dr. Plotkin testified at the hearing that Plaintiff's "[v]isual fields are full except for a small central field loss.  Monocular depth perception is normal, so she has essentially normal vision and would be able to perform normal tasks and does not meet any of the requirements for disability."  A.R. 146, 117.  Dr. Plotkin added that "[s]he would be able to drive legally" and do "all but the most specialized visual tasks."  A.R. 147, 2465.  The ALJ also noted that Dr. Plotkin concluded that Plaintiff did not need to use a cane to ambulate, and that Plaintiff can read small print and view a computer screen.  A.R. 116, 2455, 2457.   Neither the ALJ nor Defendant provides any analysis to support the conclusion that this single opinion is more consistent with the record than the opinions of Drs. Chiles and Schadlu.  Rather, the ALJ made boilerplate statements, without citation to or discussion of the evidence, that Dr. Plotkin's opinions were "consistent with and uncontroverted by the greater objective medical record." A.R. 116-17.  The discussion of the evidentiary record above contradicts this statement.  The ALJ also noted the "well-reasoned and persuasive" nature of Dr. Plotkin's opinion as an additional reason for

giving it "great and substantial weight."  A.R. 117.  But the ALJ provided no additional citations or explanations of why she found the opinion well-reasoned or persuasive.

"Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).  Here, the ALJ does not meet this burden.  She does not explain why she finds Dr. Plotkin's conclusions more consistent with the medical record, and she cites no portion of the record in support.  The evidence discussed above contradicts Dr. Plotkin's findings of no visual limitations.  Examining physicians found that Plaintiff is effectively blind in her left eye, has severe depth perception problems, needs a cane to avoid walking into walls, lacks the field of vision required for driving under state law, and can read effectively only with the aid of magnification.  This evidence is a far cry from Dr. Plotkin's opinion that Plaintiff's vision is "essentially normal," and yet the ALJ provides no clear explanation as to why Plotkin's opinion – made without an examination of Plaintiff – is more reliable than the opinions of examining doctors.  The Court concludes that the ALJ erred in rejecting the opinions of Drs. Chiles and Schadlu and adopting the opinion of Dr. Plotkin without an adequate explanation.  "When a nontreating physician's opinion contradicts that of the treating physician – but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician – the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Id.*

### 5.    Dr. Doust.

Dr. Doust is Plaintiff's treating pain management specialist.  Doc. 18 at 19.   He found that Plaintiff has limitations caused by cervical and lumbar spine pain and concurrent use of medications.  A.R. 2439.  More specifically, Dr. Doust found that

Plaintiff could sit less than two hours per day and could walk or stand less than two hours per day.  A.R. 2439.  He found that Plaintiff would have to alternate between sitting, standing, and walking at least once every hour, accompanied by at least five minutes rest each time.  A.R. 2439.  He also found that Plaintiff could lift or carry less than 10 pounds.  A.R. 2439.  Dr. Doust concluded that Plaintiff can use her hands and feet frequently while working, but could bend, reach, or stoop less than occasionally.  A.R. 2439.  Dr. Doust noted that Plaintiff suffered from moderately severe pain and fatigue, and would miss work due to her medical conditions between four and five days every month.  A.R. 2440.

The ALJ does not state what weight he gave Dr. Doust's opinions, but it appears that he gave little weight or rejected the opinions because (1) "[t]reating notes show [the medical source statement] was completed with the claimant"; (2) the "treating notes do not corroborate th[e] assessment, as they show that [Plaintiff's] pain was adequately controlled with pain medication and injections"; and (3) the assessments were not supported by "objective data which demonstrates only mild spondylosis and mild disc space narrowing[.]"  A.R. 118.  The limitations assessed by Dr. Doust are inconsistent with those assessed by the state agency physicians.  A.R. 1004-05, 1100-18, 1140-45.  Therefore, the Court must determine whether the ALJ's reasons for rejecting his opinions are specific, legitimate, and supported by substantial evidence.  *Cotton*, 799 F.2d at 1408.

### a.      The ALJ's First Reason.

The ALJ's first reason for rejecting Dr. Doust's opinion – that he completed his opinion with the involvement of Plaintiff – is not legitimate.  Dr. Doust's treatment notes from August 27, 2013 state: "We filled out a Social Security Disability form for the patient within a reasonable degree of medical probability.  The patient states she is unable to return to work secondary to her current use of narcotic analgesics secondary to her ongoing cervical and lumbar spine pain."  A.R. 2538.  As already discussed, a physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is

- 18 -

an essential diagnostic tool." *Green-Younger*, 335 F.3d at 107.  Additionally, Dr. Doust stated that his conclusions were made "within a reasonable degree of medical probability."  A.R. 2538.  This statement suggests that while Dr. Doust considered Plaintiff' subjective statements concerning her limitations, they were not the only basis for his conclusions.  Moreover, the record contains substantial treatment notes from Dr. Doust.  A.R. 2493-2539.  These notes discuss Dr. Doust's examination and observations, various prescriptions and treatments with their effects, and Plaintiff's description of her symptoms.  A.R. 2493-2539.   As will be discussed below, these notes also support Dr. Doust's conclusion about Plaintiff's limitations.

### b.      The ALJ's Second Reason.

The ALJ also rejected Dr. Doust's assessment because "treating notes do not corroborate th[e] assessment, as they show that [Plaintiff's] pain was adequately controlled with pain medication and injections."  A.R. 118.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ cited four different exhibits to support her conclusion that Plaintiff's pain was adequately controlled.  Doc. 118.  The first two are a compilation of assessments from Dr. Pattabi Kalyanam.  The third and fourth are a compilation of assessments from the Pain Center of Arizona.  A.R. 2389-2438.  The ALJ does not cite to any specific portions of these assessments.  The only explanations she provides is that "treating records show the facet injections reduced the claimant's pain by up to 90%" and, "[o]n multiple occasion, the claimant reported improved symptoms with medication." A.R. 111.

The reports from the Pain Center of Arizona do show that Plaintiff experienced 90% relief from various injections, but the ALJ does not address or even mention that the record clearly states the relief was temporary.  A.R. 2408 ("Previous lumbar fact injections were over 90% effective temporarily").  While notations from both Dr. Kalyanam and the Pain Center show that Plaintiff experienced some improvement with

medication, the ALJ does not mention that Plaintiff continued to report significant pain while on medication. *See, e.g.*, A.R. 1284 (2009 assessment noting improvements to general activity, but also a pain score of 7 while on medication – 0 representing no pain, and 10 representing "Cannot get out of bed"); A.R. 1278 (noting that patient had a pain score of 7 while on medication); A.R. 1547, 1551 (noting that patient had a pain score of 6 while on medication). Two assessments from Dr. Kalyanam state that Plaintiff's neck and back pain is "controlled with medication[,]" but they also show continued pain scores of 4 while on medication. A.R. 1553-54. They do not state what limitations or abilities Plaintiff has related to her ability to work, although one notes that Plaintiff was unable to lift her right foot. A.R. 1553. Moreover, the majority of reports from Dr. Kalyanam do not state that Plaintiff's pain was controlled. *See, e.g.*, A.R. 1551 (noting that Plaintiff experienced "minimal relief" with medication).

ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwick v. Colvin*, No. 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)); *see Garrison*, 759 F.3d at 1017 & n.23 ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). The record here shows that the ALJ selected a few statements suggesting some improvement following medication, without considering them in the context of Plaintiff's treatment. What is more, the ALJ does not relate these statements of Plaintiff's improved pain to her ability to work. It was error for the ALJ "to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

### c.    The ALJ's Third Reason.

The ALJ also rejected Dr. Doust's opinion because his "assessment remains unsupported by the objective data which demonstrates only mild spondylosis and mild disc space narrowing." A.R. 118. The exhibit cited by the ALJ in support of this conclusion contains assessments from Dr. Kalyanam. A.R. 1278-1300. The ALJ does

not identify any specific portions of this exhibit or explain how it controverts Dr. Doust's assessment.  As already noted, an ALJ's statement that a treating physicians' medical opinion is unsupported by sufficient objective findings, without more, "does not achieve the level of specificity" that the Ninth Circuit requires.  *Embrey,* 849 F.2d at 421.

The Court notes that the records reflect mild to moderate foraminal stenosis at two cervical joints, degenerative changes including foraminal narrowing, diffuse bulging of the annulus at L4-L5, and a diffuse annular bulge at L5-S1.  A.R. 1295-97.   Dr. Kalyanam's records also show significant interventions to control Plaintiff's back and neck pain, including a thoracic epidural steroid injection, a cervical epidural steroid injection, bilateral muscle trigger point injections, and bilateral nerve blocks at three joints in Plaintiff's spine.  A.R. 1283, 1285, 1290.  Given these findings and treatments, the ALJ's assertion that Dr. Kalyanam's assessment revealed only "mild" problems (A.R. 118) is not a fair characterization of the record.

The ALJ does discuss Dr. Kalyanam's reports in an earlier paragraph of her decision.  A.R. 110-11.  She notes that "the foregoing objective reports are consistent with some abnormality of the claimant's cervical, thoracic, and lumbar spine, [but] there is no evidence of any nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of the pain alleged." A.R. 111.  The ALJ does not cite any medical opinions or other sources to support her conclusion that these findings do not square with Plaintiff's reports of pain.  What is more, the ALJ already concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  A.R. 109.  She found that Plaintiff was not disabled at step four, however, because Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible.  A.R. 109.  As the Ninth Circuit has made clear, if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d

341, 345 (9th Cir. 1991).  The ALJ erred by rejecting Dr. Doust's opinion on this basis. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

### d.    Bias allegations.

Finally, the ALJ questions the motives of Dr. Doust, stating that "a doctor may express an opinion in an effort to assist a patient with whom he sympathizes," and that "patients can be quite insistent and demanding in seeking supportive notes or reports[.]" A.R. 119.  The Ninth Circuit has made clear that an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefit."  *Lester*, 81 F.3d at 832; *Gordon v. Colvin*, No. EDCV 13-2047 AJW, 2015 WL 685396, at *3 (C.D. Cal. Feb. 17, 2015).  It is also improper for an ALJ simply to reject a medical opinion because that opinion was formulated for a disability determination.  *Reddick v. Chater,* 157 F.3d 715, 727 (9th Cir.1998).  The ALJ acknowledges that "[w]hile it is difficult to confirm the presence of [improper] motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record."  A.R. 119.  As discussed above, however, the ALJ has not made an adequate showing that Dr. Doust's opinion departs from the majority of the record.  To the extent that the ALJ rejected Dr. Doust's opinion because of perceived improper motives, she erred.

### 6.    PA Tan.

Mary Jean Tan is a physicians' assistant for Dr. Edelstein who treated Plaintiff. Doc. 17 at 2.  PA Tan concluded that Plaintiff is "permanently disabled due to her chronic medical conditions."  A.R. 2544.  More specifically, PA Tan found that Plaintiff can sit for two hours per day, stand or walk for less than two hours, and lift or carry up to 15 pounds.  A.R. 2545.  She noted that Plaintiff has moderately severe limitations resulting from pain, fatigue, dizziness, headaches, and sedation.  She concluded that Plaintiff would miss at least six days of work each month due to her medical conditions. A.R. 2546.

1    The Social Security Regulations differentiate between "acceptable" medical
2  sources, which include licensed physicians, psychologists, optometrists, and podiatrists,
3  and "other" medical sources, which include nurse-practitioners, physicians' assistants,
4  and public and private social welfare agency personnel.  20 C.F.R. § 416.913(a) & (d).
5  ALJs may not discount "other" medical sources without explanation, but they may afford
6  them less weight if the ALJ provides "germane" reasons.  *Ghanim,* 763 F.3d at 1161;
7  *Molina*, 674 F.3d at 1114.  The Ninth Circuit has found it sufficient if an "ALJ at least
8  noted arguably germane reasons for dismissing [other source] testimony, even if he did
9  not clearly link his determination to those reasons."  *Lewis*, 236 F.3d at 512.  Germane
10 reasons include the fact that an opinion is inconsistent with objective medical evidence in
11 the record.  *Bayliss,* 427 F.3d at 1218.

12    PA Tan's opinion was considered by the ALJ, but given little weight.  A.R. 119.
13 First, the ALJ found PA Tan's opinion to include legal conclusion that "can never be
14 entitled to controlling weight[.]"  A.R. 118.  "Although the ultimate legal conclusion as to
15 whether a claimant is disabled under the Social Security Act is an issue reserved to the
16 Commissioner, the ALJ is still required to consider, and give legally sufficient reasons
17 for rejecting, a treating physician's subjective judgments about a claimant's ability to
18 work."  *Schrader v. Colvin*, No. ED CV 14-961-PLA, 2015 WL 1061681, at *11 (C.D.
19 Cal. Mar. 10, 2015); *Reddick*, 157 F.3d at 725 ("physicians may render medical, clinical
20 opinions, or they may render opinions on the ultimate issue of disability – the claimant's
21 ability to perform work.").  It follows that an ALJ must also give legally sufficient
22 reasons – germane reasons – for rejecting a physicians' assistant's legal conclusions
23 about a claimant's disability.

24    Here, the ALJ states that "[t]here is no evidence that Ms. Tan is familiar with the
25 definition of 'disability' contained in the Social Security Act and Regulations."
26 A.R. 118.  In addition to the fact that this is speculation, the question is not whether PA
27 Tan can give a correct legal opinion, but whether the ALJ should discount PA Tan's

28

conclusion that Plaintiff cannot work.  PA Tan's legal knowledge is not germane to this question.

The ALJ also found that PA Tan's opinion "contrasts sharply with other evidence in the file, including [Plaintiff's] activities of daily living and fairly unremarkably physical examinations."  A.R. 118.  She noted that the opinion is inconsistent with the treatment notes and unduly relies on Plaintiff's subjective complaints.  A.R. 118.  While the ALJ makes no citations to the record to support these assertions, she does discuss inconsistencies between Plaintiff's alleged limitations and her reported daily activities elsewhere in the record.  A.R. 113 (noting that Plaintiff has engaged in caring for a pet, preparing meals, caring for personal hygiene, performing light household chores, walking, using public transportation, travelling to Houston in 2011, reading, driving and swimming in the past, and shopping outside the home).  The ALJ asserts that "[t]he physical and mental capabilities requisite to performing many of the tasks described above replicate those necessary for obtaining and maintain employment."  A.R. 113.  Although it is a close call, the Court finds this explanation sufficiently germane to PA Tan's permanent disability conclusion to satisfy the relatively modest legal requirement for discounting "other" medical source opinions.

### 7.    Sandford Goldstein.

Sandford Goldstein is Plaintiff's examining physical therapist.    Goldstein concluded:

> Plaintiff was "capable of performing jobs with sedentary physical demand level based on the Dictionary of Occupational Title (1991) definition . . . However, based on [Plaintiff's] documented and supported pain and its effects on function, the sedentary occupational base would likely be eroded to a degree that the subject would be unable to do this type of work full time.   Therefore, her goal of part-time employment in her field seems reasonable.

A.R. 1042.

The ALJ gave Goldstein's findings "partial weight to the extent they remain consistent with and supported by the medical evidence in its entirety, including [his] own

findings." A.R. 114.  The ALJ appears to give decreased weight to Goldstein's opinion because Plaintiff has lost significant weight since Goldstein's examination, at which point she weighed 240 pounds.  A.R. 114.  Plaintiff's obesity likely affected abilities measured by Goldstein, including her ability to work and stand.  A.R. 114.  Additionally, the ALJ found that Goldstein relied heavily upon the subjective reports of Plaintiff, and that Goldstein's conclusion was unsupported by his own findings and Plaintiff's reported daily activities.   A.R. 114.   Physical therapists, like physicians' assistance, are not considered "acceptable medical sources."   Accordingly, the ALJ must note "arguably germane reasons for dismissing" Goldstein's testimony.  *Lewis*, 236 F.3d at 512.  The ALJ's decision to give less weight to Goldstein's opinion because it was formed before Plaintiff underwent gastric bypass surgery and lost significant weight is a germane reason supported by the record.   The ALJ could reasonably have concluded that Plaintiff's obesity contributed to limitations observed by Goldstein.

### 8.    Dr. Scott.

Dr. Scott is a non-examining audiologist who completed an interrogatory finding that Plaintiff retained "the ability to hear and understand simple oral instructions and to communicate simple information[,]" as well as use the telephone.  A.R. 2470.  The ALJ gave her opinion "great weight."  A.R. 116.  Plaintiff does not contest the amount of weight given to the opinion, but argues that the ALJ "erred by ignoring portions of Dr. Scott's opinion."  Doc. 17 at 18.

First, Plaintiff notes that Dr. Scott's finding of the ability to hear and understand simple oral instructions "equates with basic communication abilities needed for unskilled work[,]" yet the ALJ found that Plaintiff could perform semi-skilled/skilled work.  *Id*. Next, Plaintiff argues that the ALJ ignored Dr. Scott's opinions that "hearing aids did not restore hearing and [Plaintiff] may continue to experience some hearing/communication challenges particularly with a lot of background noise and if someone was not facing her or was speaking from a distance."  *Id*.  Dr. Scott also noted that Plaintiff's "hearing may improve with telephone hearing aid technology."  *Id*.

It is impractical for an ALJ to address every finding and every statement in each medical opinion in the record.  An ALJ must simply consider the record as a whole and avoid selectively focusing on only that evidence which supports the ALJ's decision.  *See Garrison*, 759 F.3d at 1017 & n.23.  There is no evidence that the ALJ did not consider the evidence identified by Plaintiff.  The ALJ noted that Dr. Scott believed that "using hearing aid amplification would result in significantly better hearing[,]" and that "[w]ithout hearing aids, the claimant could struggle in jobs that were verbally demanding[.]"  A.R. 116.  Dr. Scott did not unequivocally find that Plaintiff would continue to have hearing challenges with hearing aids, but only noted that it as a possibility in situations with background noise where a speaker is not facing her.  A.R. 2480.  Whether or not the ALJ erred in finding that Plaintiff could still engage in past or alternative employment with her noted RFC will be addressed below.

### 9.    Whether Error was Harmless.

Even if the ALJ committed error in improperly weighing medical opinions, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error."  *Molina*, 674 F.3d at 1115; *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  The ALJ erroneously gave little weight to the opinions of four treating or examining physicians – Drs. Edelstein, Doust, Chiles, and Schadlu – who determined that Plaintiff has substantial limitations.  The ALJ also selectively chose findings from Drs. Binette and Fruchtman, ignoring observations and conclusions favorable to Plaintiff.  Finally, the ALJ adopted the opinion of a nonexamining medical expert without providing specific and legitimate reasons, supported by substantial evidence, for doing so.

The Court cannot conclude that the ALJ would have reached the same conclusions had she properly evaluated the opinions of these doctors.  Edelstein, Doust, Chiles, and Schadlu found that Plaintiff has significant limitations that affect her ability to work.  The ALJ's error was not harmless.

**C.    Symptom Testimony.**

In evaluating the claimant's symptom testimony, ALJs must engage in a two-step analysis.  First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged.   20 C.F.R. § 404.1529(b).   If the claimant presents such evidence, the ALJ proceeds to consider "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant]," her doctors, and other persons to determine the persistence and intensity of these symptoms.  § 404.1529(c)(1).  If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[1]

Plaintiff testified that she was unable to work because of blindness in her left eye and blurry and double vision in her right eye, difficulty hearing in most environments, headaches, back and neck pain, full body pain cause by fibromyalgia, numbness in her legs and feet caused by neuropathy, exhaustion, anxiety and depression, and difficulty concentrating and remembering.  A.R. 243-47, 289-97; Doc. 17 at 5.  Plaintiff alleged that she cannot drive,  requires magnifying aids to read and use computers, uses a blind cane in unfamiliar areas, cannot hear conversations over the phone and struggles to hear in-person conversations, lives in a home for the mentally ill and visually impaired, and has limited function due to severe physical pain.   A.R. 234-38, 255, 289-97, 303.  Plaintiff underwent gastric bypass surgery in 2009, has lost weight over time, and has controlled her diabetes enough to stop the use of insulin.  A.R. 290-95.  She testified that despite various treatments, she continues to struggle with hearing and vision loss, debilitating pain, and mental illness.  A.R. 227, 234-36, 302.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements

---

[1] Defendant opposes the clear and convincing standard of review.  Doc. 18 at 4.  The Ninth Circuit has held, however, that Defendant's position "lacks any support in precedent and must be rejected."  *Garrison*, 759 F.3d at 1015 n.18.

concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. A.R. 109.  In other words, the ALJ found Plaintiff's statements not credible to the extent she claims an inability to work in a competitive environment.  The ALJ reached this conclusion because Plaintiff  (1) "has not generally received the type of medical treatment one would expect for a totally disabled individual"; (2) her complaints were not supported by objective medical evidence or laboratory findings; (3) she demonstrated a healthy and comfortable appearance; (4) she has been non-compliant with pain medication; (5) her reported daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"; and (6) the existence of "glaring inconsistencies" in the record.  A.R. 109-113.  Plaintiff challenges each of these findings.

### 1.    Medical treatment.

In some circumstances, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Here, however, "no medical opinion in this record characterizes the treatment of Plaintiff's [fibromyalgia and degenerative disc disease] as 'conservative,' nor does substantial evidence support that conclusion." *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1061 (N.D. Cal. 2014).  The ALJ acknowledges that Plaintiff "sought treatment through a pain management clinic and [] underwent thoracic and cervical epidural steroid injections, as well as lumbar facet joint medial branch block injections." A.R. 111.  She emphasizes, however, that Plaintiff's treatment was limited to "routine medication and occasional injections[,]" without "evidence of hospitalizations, physical therapy, surgery or other similar treatment[.]"  A.R. 111.  She also notes that "someone with a condition as severe as is alleged by [Plaintiff] would seek more frequent care than she has."  A.R. 111.  The ALJ then concludes, without additional explanation, that a "review of the record demonstrates that relatively conservative care" was used to treat Plaintiff's pain.  A.R. 111.

The record does not support this conclusion.  As discussed, Dr. Edelstein, Plaintiff's treating physician, prescribed multiple different treatments and  medication, including Toradol injections, Vicodin, Lyrica, Tramadol, Opana, MS Contin, Kenalog injections, and Fentanyl patches.  A.R. 941, 949, 1080, 1084, 1088, 2049, 2053.  The ALJ does not explain how she came to the conclusion that the use of powerful opioid pain medications such as Fentanyl, Vicodin, Opana, and MS Contin is "routine."  What is more, the Ninth Circuit has rejected arguments that "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."  *Garrison*, 759 F.3d at 1015 n.20.   Nor did the ALJ explain why surgery, physical therapy, or hospitalization would have been proper treatments for Plaintiff's conditions, let alone necessary to find the severity of symptoms that Plaintiff reports.

Additionally, the ALJ does not state how frequently she would expect Plaintiff to seek treatment.  The record indicates that Plaintiff sought treatment every few weeks. *See, e.g.*, A.R. 922 (4/11/08 appointment with Dr. Edelstein); A.R. 926 (5/9/08 appointment); A.R. 928  (5/16/08 appointment); A.R. 936 (6/13/08 appointment); A.R. 941 (8/1/08 appointment); A.R. 945 (8/18/08 appointment); A.R. 927 (9/5/08 appointment); A.R. 2524 (10/24/13 appointment with Dr. Doust); A.R. 2519 (11/15/13 appointment); A.R. 2515 (12/2/13 appointment); A.R. 2507 (12/22/13 appointment); A.R. 1505 (1/19/14); A.R. 2499 (2/17/14 appointment).

The ALJ found that "records reflected the claimant's musculoskeletal pain was controlled with medication."  Doc. 111. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre*, 439 F.3d at 1006.  As discussed above, however, the record does not show that Plaintiff's pain was effectively controlled by medication.  Rather, it appears that relief from injections was only temporary (A.R. 2396), and that Plaintiff consistently reported significant pain while medicated (*see, e.g.*, A.R. 947, 1284, 2493).  The ALJ also notes that Plaintiff "often asked that medication be refilled without changes which suggests medication regimen was effective at stabilizing her symptoms and condition

without need for change."  A.R. 111.  The ALJ does not cite to the record to support this assertion.  A review of Dr. Edelstein's treatment notes shows that he frequently adjusted her medications to more effectively treat Plaintiff's pain.  *See, e.g.*, A.R. 922, 926, 928, 938, 945, 947 (increasing medication to increase effectiveness).   Evidence that medications provided temporary relief from Plaintiff's pain symptoms is not evidence that Plaintiff no longer experienced severe pain symptoms.

### 2.    Medical Evidence and Laboratory Findings.

First, the ALJ found that the objective record does not support a showing of fibromyalgia.   This is directly contradicted by the ALJ's finding at step two that fibromyalgia was one of Plaintiff's severe medically determinable impairments.  The ALJ acknowledges this, but appears to rely on the alleged lack of objective evidence to discount the severity of the pain, noting that "allegations of being in 'constant pain' are not documented in the medical record."  A.R. 112.  The Ninth Circuit has made clear, however, that a claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."   *Garrison*, 759 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1282).

Related to Plaintiff's hearing, the ALJ found that Plaintiff suffered from the severe impairment of "bilateral sensorineural hearing loss," but ultimately concluded that any limitations resulting from this impairment "are not disabling."  A.R. 109.  The ALJ discussed objective findings, diagnostic studies, and other treatment records, but did not compare these to Plaintiff's testimony.   This failure alone shows that the ALJ did not satisfy her burden of providing clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.  *Vasquez*, 572 F.3d at 591.  What is more, the Court finds that the ALJ impermissibly cherry picked evidence which disfavored Plaintiff's claims.  For example, the ALJ cited to 2008, 2009, and 2012 tests showing only mild to moderate hearing loss and cochlear outer hair cell dysfunction.  A.R. 109-10.  The ALJ also cited to several records to conclude that Plaintiff "maintained excellent speech recognition" and "could perform nearly as well as normal hearing

individuals in a poor listening environment and required only a slightly more elevated signal-to-noise ratio." A.R. 110. The ALJ also notes that "one audiologist asserted that [Plaintiff] would have minimal communication difficulties[,]" but cites nothing in the record.

Other evidence suggests more significant limitations. For example, a 2010 report found that based on test results, reported communication difficulties, and visual deficit, Plaintiff had a "significant hearing loss that qualifies as a disability and poses a barrier to effective communication and to acquiring and maintaining employment." A.R. 2190. The report also found that amplification in each ear was necessary. A.R. 2191. While the ALJ acknowledged that hearing aids were recommended, she did not discuss whether Plaintiff had any continued hearing limitations when using hearing aids.

Plaintiff also argues that the ALJ "omitted evidence that hearing loss was significant when combined with vision loss[.]" DOC. 17 at 15-16. The Court agrees that the ALJ did not discuss the limitations caused by the combination of hearing and vision loss suffered by Plaintiff. This was error because impairments "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d 821, 829 (citation omitted).

### 3.    Healthy Appearance.

The ALJ found that Plaintiff's "healthy and comfortable appearance" was "in sharp contrast to [her] allegations[.]" A.R. 112. The ALJ cited to several portions of the record to support her observation that "treating physicians consistently observed that [Plaintiff] appeared healthy, relaxed, comfortable, well, and in no acute distress." A.R. 113. Plaintiff argues that these findings were "isolated general findings and did not constitute substantial evidence." Doc. 17 at 27. Even if these were not isolated findings, the Court cannot conclude that the ALJ's observation is a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom testimony. *Vasquez*, 572 F.3d at 591. A person may be disabled without constantly appearing unhealthy or in acute distress. The ALJ seemed to agree, as she noted that this observation was "only

one among many being relied upon in reaching" her conclusion that Plaintiff's symptom testimony was not credible.  A.R. 112.

The ALJ also noted Plaintiff's "unpersuasive appearance and demeanor while testifying at the hearing."  A.R. 119.  The ALJ noted that she did not appear to be in pain or discomfort, and that she was able to hear questions even though she was not using hearing aids.[2]  A.R. 119.  An "ALJ's reliance on his personal observations of [a claimant] at the hearing has been condemned as 'sit and squirm' jurisprudence."  *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985).  The ALJ did not err, however, because she noted that the hearing "cannot be considered a conclusive indicator of [Plaintiff's] overall level of functioning[,]" and gave only "slight weight" to Plaintiff's appearance and demeanor at the hearing.  A.R. 119.

### 4. Non-compliance with pain medication.

The ALJ also reasoned:

> There is evidence that [Plaintiff] was non-compliant with pain medication, as urine drug screen from early 2014 showed negative for medications. Upon questioning, [Plaintiff] admitted she had previously taken more than what was prescribed and thus, ran out early.  This suggests the information provided by [Plaintiff] is unreliable, given her apparent tendency to exaggerate, or misrepresent, integral information.

A.R. 113 (citation omitted).  The ALJ does not indicate that she believed Plaintiff to have lied about finishing her prescription early.  Plaintiff's failure to take medication because her prescription had run out, combined with her apparently honest response when questioned about that failure, does not support a finding that Plaintiff is not credible.  If anything, overuse of medication seems to support her claims of severe pain.  Thus non-compliance with pain medication is not a clear and convincing reason, supported by substantial evidence, for discrediting Plaintiff's testimony.

---

[2] Plaintiff had stopped using hearing aids because she could not "afford new batteries."  A.R. 111.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.      Daily Activities.**

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016.  Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ found that Plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  A.R. 113. Specifically, she relied on reports that Plaintiff lived alone, cared for a pet, performed light household chores, walked as a method of transportation, shopped, visited her mother, and got along well with others.  A.R. 113.  The ALJ also relied on daily activity reports suggesting that Plaintiff watched hours of television every day, operated a computer, traveled out of town to visit family, used public transportation, and read often. A.R. 113.  The ALJ also noted that Plaintiff had a history of swimming several times a week, rode a bicycle, pursued a master's degree, and drove a vehicle in the past. A.R. 113.  But the ALJ did not find that Plaintiff spent a substantial part of her day engaged in these activities.  Moreover, she did not explain how they are inconsistent with Plaintiff's claimed limitations, but simply concluded that "[t]he physical and mental capabilities requisite to performing many of the tasks described above replicate those necessary for obtaining and maintaining employment."  A.R. 113.

1    Moreover, the daily activity reports on which the ALJ relied actually document

2  significant limitations that are consistent with Plaintiff's symptom testimony.  *See* A.R.

3  318, 1031 (Plaintiff resigned from school in February of 2008 because of vision and

4  hearing problems); A.R.  1031 (Plaintiff has 4 to 5 bad days per week, during which she

5  only takes her medication, feeds her dog, eats, and lies down); A.R. 1031 (Plaintiff listens

6  to the TV because her eyes get tired); A.R. 1031 (Plaintiff only shops at the grocery store,

7  and no other stores, twice a month); A.R. 1032 (Plaintiff's mother pays someone to clean

8  her house); A.R. 1038 (Plaintiff cannot walk distances and is slow and methodical); A.R.

9  (Plaintiff experiences pain all over while swimming); A.R. 1038 (Plaintiff would operate

10  a computer only when her vision improves with medical intervention); A.R. 1038 (can't

11  walk to travel); A.R. 675 (Plaintiff cooks easy meals and rests afterward); A.R. 676, 678

12  (Plaintiff can no longer swim or drive); A.R. (vocational rehabilitation services

13  recommended that Plaintiff use low vision aids and assistive technology when operating a

14  computer).   The Court accordingly finds that the ALJ erred in discounting Plaintiff's

15  symptom testimony based on her daily activities.[3]

16                    **6.    Inconsistencies.**

17    The ALJ also concluded that Plaintiff's credibility was undermined by "glaring

18  inconsistencies observed in the record."  A.R. 112.  The ALJ noted these inconsistencies

19  mostly in relation to Plaintiff's testimony regarding her hearing ability, but also noted

20  inconsistencies related to her visual ability.  A.R. 110, 112.

21    The ALJ noted that (1) "an examining physician observed that [Plaintiff] did not

22  have difficulty hearing at a normal level"; (2) "individuals spoke with [Plaintiff] on the

23  phone without any mention of difficulty"; (3) "upon routine office visits and

24  examinations, there were no hearing abnormalities"; (4) Plaintiff first reported hearing

25  loss at age 20 and there is no evidence of worsened hearing, yet Plaintiff "was able to

26

27    [3] The ALJ also noted that Plaintiff participated in services with vocational
rehabilitation from 2008 through 2013 and "[t]his evidence suggests [Plaintiff] may not
28  feel she is as disabled as she has alleged in connection with this application for benefits."
A.R. 112.  The Court does not find that a claimant's efforts to improve her condition
constitute a clear and convincing reason to disbelieve her testimony about limitations.

work at levels exceeding substantial gainful activity despite this condition"; and (5) when Plaintiff received hearing aids, she reported "being very satisfied and hearing sounds that were previously missed[.]"  A.R. 110.

First, the examining physician referenced by the ALJ is a psychiatrist, Dr. Steingard.  A.R. 1624.  In her examination notes from January 7, 2011, she observed that Plaintiff "did not appear to have hearing problems at a normal conversation level." A.R. 1627.  There is no other evidence in her notes to suggest that she evaluated Plaintiff's hearing abilities, and the evaluation undoubtedly took place in a private room without significant background noise.

To support the second reason, the ALJ cites to Exhibit 47f.  Of relevance, this exhibit contains a seven-sentence report from Vocational Rehabilitation Services describing the content of a message from and phone call with Plaintiff, during which Plaintiff stated that her hearing aids were not working properly and requested new ones. A.R. 1277.  That the paragraph does not mention if Plaintiff experienced any hearing difficulties during the call is not substantial proof that Plaintiff does not experience hearing difficulties generally.  Although affirmative findings of no hearing abnormalities would constitute clear and convincing evidence of inconsistencies, the fact that routine examinations did not note hearing abnormalities does not.

The fact that Plaintiff has worked in the past despite reports of hearing loss does not establish inconsistencies.  Plaintiff has cited a combination of impairments when seeking disability status.  She and several physicians have highlighted that her hearing and vision loss have a compounding effect, and that it is the combination of the two that lead to her limitations.  As noted, it is error for the ALJ to consider impairments in isolation from one another.  DOC. 17 at 15-16; *Lester*, 81 F.3d 821, 829 (citation omitted).

The ALJ also noted that (1) Plaintiff claimed double vision in her right eye, but records showed good right eye vision; (2) Plaintiff claimed to need an assistive device in unfamiliar places, but treatment records do not always indicate the use of such a device;

and (3) Plaintiff does not have trouble getting around indoors at home.  A.R. 112.  The Court does not see how these are inconsistent with the record.  Double vision in the right eye results from "interference from the left eye," suggesting that isolated right eye vision would not be affected.  A.R. 2540.  Additionally, Plaintiff stated that she used assistive devices in unfamiliar places.  Presumably, her home is not an unfamiliar place.

The ALJ also emphasized that one examiner found that Plaintiff's "perceived disability appears greater than what is observed."  A.R. 113 (quoting Exhibit 44f).  As Plaintiff notes, this examiner was a nurse who conducted a psychological examination of Plaintiff in relation to her application for bariatric surgery.  A.R. 1224.  Importantly, the nurse also noted that "there is no evidence to suggest that [Plaintiff] was motivated to portray herself in a more negative or pathological light than the clinical picture would warrant[,]" and Plaintiff's "somatic complaints are likely to be chronic and accompanied by fatigue and weakness that renders [Plaintiff] incapable of performing even minimal role expectations."  A.R. 1219.

The Court accordingly finds that the ALJ was not entitled to discount to discount Plaintiff's symptom testimonies because of inconsistencies in the record.

### 7.    Lack of motivation.

Finally, the ALJ found that Plaintiff "has a history of relatively modest and inconsistent earnings prior to the alleged onset date.  This suggests a lack of motivation and undermines [Plaintiff's] credibility."  A.R. 119.  The ALJ cited to an earnings record for Plaintiff, but provided no explanation for why she found that it suggests a lack of motivation.  The record does show several years with no or only modest earnings (A.R. 632-33), but the ALJ does not address what Plaintiff was doing during those years or why her earnings may have been low.  The Court cannot conclude that the ALJ erred in considering this factor, but when it is combined with the only other factor the Court finds proper – the "slight" negative weight assessed by the ALJ on the basis of Plaintiff's demeanor at the hearings (A.R. 119) – the Court does not find that the ALJ has provided specific,  clear,  and  convincing  reasons,  supported  by  substantial  evidence,  for

disbelieving Plaintiff's claims concerning the severity of her conditions.  *Vasquez*, 572 F.3d at 591.

## V.    Remedy.

Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true.  *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true.  *Garrison*, 759 F.3d at 1020 (internal citations omitted).  Courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Id.* at 1020.  The relevant factors require the Court to remand for an award of benefits.

First, the record has been fully developed.  Indeed, the record in this case is extensive.

Second, the ALJ failed to provide a legally sufficient reason for rejecting the medical opinions of Drs. Edelstein, Doust, Chiles, and Schadlu, as well as Plaintiff's symptom testimony.

Third, the medical opinions and Plaintiff's testimony, if credited as true, would require the ALJ to enter an award of benefits.  Vocational experts Welsh and Atha testified at the March 25, 2014 hearing.  The ALJ presented to Welsh the hypothetical of an individual with "an impairment that seriously affects the ability to function and that would be in depth perception, reading average sized print, reading a computer screen, seeing fine details and driving in unfamiliar places. The person would have an impairment that affects but does not preclude the ability to function in driving in familiar places, in reading large print, in walking at unfamiliar ground, and on uneven surfaces."

A.R. 205.  Welsh testified that such a person would not be able to perform Plaintiff's past work or the jobs to which Plaintiff's skills would transfer, as these "positions require a lot of paperwork and a lot of documenting."  A.R. 205.

Atha testified that a hypothetical individual who was limited to sedentary work in a quiet environment could not perform Plaintiff's past work.  A.R. 259.  The ALJ rejected this assessment as unsupported, instead relying on the Dictionary of Occupational Titles, which found that caseworker positions have a moderate noise level intensity and substance abuse counselors have a quiet noise intensity level.  A.R. 120.  Atha did not opine as to whether Plaintiff could engage in past work with her visual impairment. Because the evidence clearly demonstrates that Plaintiff could not perform her past work due to her visual impairments, the Court need not decide whether the ALJ erred in rejected Atha's testimony that Plaintiff's hearing impairments prohibited her from engaging in past work.

Additionally, Atha testified that a person with Plaintiff's skills and background could find other work in the national economy as a rehabilitation clerk.  When asked whether an individual who "would need a job in which reading on the computer or on paper is not a significant portion" would be able to work as a rehabilitation clerk, the vocational expert replied that the individual would not.  A.R. 261.  She added that employment as a rehabilitation clerk requires "extensive computer use" and reading of documents.  A.R. 261.  As a result, the vocational expert concluded that someone with Plaintiff's limitations would not be able to find work in the national economy "without significant accommodation."  A.R. 261.

There was no finding that sufficient accommodations have been or would be available to Plaintiff, nor is the Court convinced that such a finding would affect the ultimate disability determination.  *See Cleveland v. Policy Mgm't. Sys. Corp.*, 526 U.S. 795, 803 (1999) (finding that claims for Social Security Disability Insurance benefits and for damages under Americans with Disability Act do not inherently conflict because "when the SSA determines whether an individual is disabled for SSDI purposes, it does

*not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.").

Finally, the Court does not find that the record as a whole raises serious doubt about whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits based on Plaintiff's application dated March 17, 2008, with a finding of disability beginning February 15, 2008. The Clerk is directed to terminate this action.

Dated this 3rd day of March, 2017.

David G. Campbell
United States District Judge